IN RE WILL AND CODICIL OF JOHN M. BARNES, Deceased.

(*January* 10, 1941.)

LAYTON, C. J., and TERRY, J., sitting.

*James M. Tunnell, Jr.,* and *Daniel J. Layton, Jr.,* for proponents.

*Robert G. Houston* and *Isaac D. Short, 2nd,* for contestants.

Superior Court for Sessex County, October Term, 1940.

LAYTON, Chief Justice:

Questions of this general character have fre-

quently been asked in will contests, but we think the objection to this question should be sustained. The question is very broad and general. The question, as put, does not even assume that the testimony is true, or that the jury believes it to be true. But more than that, the jury does not know, nor does the Court, how much of the testimony the witness has remembered, nor the particulars on which he may rely for his opinion, matters which the jury may not believe at all or to which they may give little or no weight. In such matters the Court has a large discretion. Much of the evidence has little significance; and we think that in the state of the evidence a hypothetical question should be framed and submitted. As it is now late an adjournment will be taken until tomorrow morning to give counsel ample time to prepare a proper question.

On the next day, the following question was submitted: "Assuming a man eighty-one years of age; his memory and judgment are impaired, particularly with regard to recent events; he has delusions in that he is antagonistic towards members of his immediate family without known cause and has false beliefs with respect to other persons; he has cancer of the liver, pancreas and gall bladder and the ducts connecting those organs, a condition which has existed for at least a year, and as a result of which he has lost one hundred or more pounds within a short time; he has had generalized arterio-sclerosis for at least a year and definite cerebral arterio-sclerosis since at least November of 1938, and at sometime within the past year has had a stroke of paralysis. In your opinion, doctor, can such a man be of sound and disposing mind and memory?"

Objection to the question was made. The Court directed the jury to retire. It was contended by the proponents that there was no evidence of impairment of judg-

ment, and no sufficient evidence that the testator suffered from insane delusions affecting his capacity to make the will and codicil.

LAYTON, Chief Justice:

█ █   The question will be reframed.   While there is some little evidence of impairment of memory, there is no evidence at all of impairment of judgment.

As to delusions the testimony is clearly insufficient. A delusion which might incapacitate a person from making a will, is a false belief for which there is no reasonable foundation, a conception of the existence of something which does not exist, of which the mind of the person entertaining it cannot be permanently disabused, and which influences the provisions of the will.   The daughter testified that the testator, without cause, thought that she opposed his desire to have her son indentured as a pilot's apprentice; but this testimony does not go further than to indicate a suspicion or impression on the testator's part, and there is no evidence whatever that this mistaken belief influenced the provisions of the will, by which, after making provision for the payment out of the estate of the amount necessary to be paid to the Pilot's Association by the grandson if he became a licensed pilot, all of the income of the remainder of the estate was directed to be paid to the daughter during her life.

The codicil reduced the benefit to the daughter.   By it the daughter was given an income of forty dollars a month, the remainder of the income to be accumulated, and the accumulations paid to the grandson at the daughter's death, and thereafter the income as it accrues to the grandson for his life.   The supposed delusion is based on these facts and circumstances: from the will itself it is made clear that

the testator did not want his son-in-law to have any share in or control over his estate, or to put his hand or foot on his property. From the evidence it is manifest that the testator thought litle of his son-in-law, and there is no evidence at all that his dislike was without foundation. The grandson was accepted as a pilot's apprentice, and this was due to the efforts of the testator, a retired pilot himself. Joseph L. Marshall, who drafted the condicil, testified that the testator told him that he wanted his will changed; that some one had told him that his son-in-law had been drinking and had gone around the town boasting that he had taken care of his son for years, and he had gotten him on the pilot boat, and now the boy could look after himself; that Mr. Marshall tried to persuade him not to change his will, and told him that he knew that on the occasion in question the son-in-law was not drunk, but that his efforts were of no avail; and, accordingly, he prepared the codicil as directed.

■ ■ Everyone is presumed to have testamentary capacity, and the burden is on the contestant to show the contrary. There is no evidence whatever that the testator had not been told of the statements alleged to have been made by the son-in-law, and that therefore the testator's belief had no existence in fact. If he was told of the statement certainly the statement made by Mr. Marshall that the son-in-law was not drunk, and his efforts to persuade him not to alter his will cannot be accepted as a false belief entertained against all argument, reason or proof. Mistake and prejudice are not alone insane delusions; and if there are any facts, although they may have small evidential force, upon which the testator may in reason have based his belief, it will not be an insane delusion, although the Court may think his belief without foundation and, there-

fore, illogical. The references to delusions will be stricken from the hypothetical question.